[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-17088
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 12, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-01329-CV-T-30-MAP

SCOTTSDALE INSURANCE COMPANY,
a foreign corporation,

Plaintiff-Counter-
Defendant-Appellee,

versus

WAVE TECHNOLOGIES COMMUNICATIONS, INC.,
a Florida corporation,
RITA A. TODD,

Defendants,

RUTH COCHRAN, individually and as the personal
representative of the Estate of Donald F. Cochran, deceased,

Defendant-Counter-
Claimant-Appellant,

VIASY'S NETWORK SERVICES, INC.,
a foreign corporation,

Defendant-Counter-
Claimant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(August 12, 2009)

Before BLACK, BARKETT and COX, Circuit Judges.

PER CURIAM:

## I.  BACKGROUND

Scottsdale Insurance Company ("Scottsdale") filed a complaint for declaratory relief against Wave Technologies Communications, Inc. ("Wave"), Ruth Cochran, individually and as the personal representative of the estate of her husband Donald Cochran ("Cochran"), Rita A. Todd ("Todd"), and Viasys Network Services, Inc. ("Viasys").  The lawsuit was initiated after claims were filed with Scottsdale by Viasys for liability coverage covering damages caused by a Wave subcontractor's operation of heavy equipment in a manner that allegedly caused a motor vehicle accident on April 21, 2007 ("the accident").  Todd was injured in the accident and Donald Cochran was killed.  Viasys was the prime contractor with which Wave had contracted to perform work being done at the time of the accident.

Scottsdale's lawsuit sought a declaration that it could rescind a general liability insurance policy it had issued to Wave on the basis that Wave made material

misrepresentations in its application for the policy. Scottsdale alleged that Wave had misrepresented its business operations as involving no digging or use of heavy equipment and that Wave failed to disclose that it had a prior loss under another insurance policy. Scottsdale also alleged that, had Scottsdale known of Wave's actual business, it would not have issued the insurance policy or would have charged a substantially higher premium for the coverage.

Neither Wave nor Todd answered the complaint, and default judgments were entered against them. Cochran and Viasys (collectively, "Defendants") answered and pleaded, among other defenses, that Scottsdale had waived its right to rescind the policy by failing to rescind it when it knew, or should have known, of misrepresentations in the application. Defendants also counter-claimed, seeking liability coverage for their damages caused by the accident.

Scottsdale moved for summary judgment. Defendants opposed the motion, in part based upon an argument that, in late December 2006, around the time Scottsdale wrote the general liability insurance policy at issue in this case, Scottsdale's agent hired a contractor to conduct a liability survey and that survey uncovered facts that should have caused Scottsdale to investigate the representations on Wave's application. (R.1-54 at 7-9.) In its opposition papers, Viasys identified the facts discovered by the survey that were at odds with Wave's application and should have

3

caused Scottsdale to conduct further inquiry as: (1) use of subcontractors for $100,000 of work per year (not identified on the application); (2) a two-year business history (as opposed to the "new venture" described on the application); and (3) performance of some "minor construction work . . . using a shovel to dig and locate utilities." (as opposed to application statement that Wave did "no digging.") (*Id.* at 7, 9, 10, 18.) And, Viasys presented evidence that Scottsdale's general agent Southern Cross received this information from the survey contractor and considered the first of these issues significant enough that Southern Cross attempted to conduct some follow-up investigation of that issue. (*Id.* at 9, 10, 18.) But, when Southern Cross received no response to its clarifying inquiries, it failed to relay the information to Scottsdale and took no further action. (*Id.* at 9.)

Defendants argued that, had Scottsdale properly conducted a further inquiry into the discrepancies discovered by the survey, it would have discovered that: (1) Scottsdale previously had written a general liability policy for Wave's business operations; (2) in the application for the earlier policy, Wave had been described properly as a cable conduit contractor engaged in excavation, tunneling, underground work, and earth moving who relied on significant work by sub-contractors; and (3) Scottsdale had received a claim under that earlier policy. (R.1-54 at 11-14.) Defendants further argued that Scottsdale's failure to conduct an investigation in a

4

manner that discovered these facts resulted in Scottsdale's waiver of its right to rescind the policy.

The district court granted Scottsdale's motion for summary judgment. In doing so, the court relied on the rule that "an insurer is entitled to rely on the representations of the insured even without checking its own files unless some circumstance arises that would call attention to the false statements." (R.1-60 at 7 (citing *Schrader v. Prudential Ins. Co. of Am.*, 280 F.2d 355, 362 (5th Cir. 1960).) However, the court did not address Defendants' argument that the facts raised in the liability survey should have spurred Scottsdale to investigate further. The court entered judgment for Scottsdale.

Defendants brought timely motions to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing that the court had erred so as to commit a manifest injustice. In these motions, Defendants again presented the argument that a jury question existed as to whether, when Scottsdale's contractor discovered that Wave had been in business for two years, performed construction work, and used sub-contractors to perform significant work, Scottsdale was on notice that Wave may have made misrepresentations in its application and that further investigation was due. (R.1-62 at 3 ¶5, and 6 ¶¶15 and 17.) Defendants argued that summary judgment for Scottsdale was inappropriate because these facts raised a jury

5

question as to whether "circumstances . . . which called attention to the false statements" existed. (*Id.* at 6 ¶17.) The court denied the motion, addressing only the discrepancy in the amount of subcontractor work and finding that discrepancy did not call Scottsdale's attention to the fact that Wave may have made misrepresentations on its application. (R.1-66 at 6.)

Defendants appeal the judgment, making the arguments (as they did in their summary judgment opposition and Rule 59 papers) that the facts discovered by Scottsdale's survey contractor raise jury questions as to whether Scottsdale was on notice that it should further investigate whether Wave made misrepresentations and as to whether the investigation that was done by Scottsdale's general agent Southern Cross was reasonable.

## II. STANDARD OF REVIEW

This court reviews a grant of summary judgment by applying the same legal standards used by the district court. *See, e.g.*, *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999) (citation omitted). Summary judgment is appropriate where "'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 (11th Cir. 2001) (*quoting* Fed. R. Civ. P. 56(c)).

# III. DISCUSSION

The parties do not disagree over the applicable law. There is no dispute that an intentional misrepresentation by an applicant of a material fact, relied on by the insurer, allows the insurer to void a policy. *See New York Life Ins. Co. v. Strudel*, 243 F.2d 90, 93 (5th Cir. 1957). However, if the insurer either did not rely on the misrepresentation or should not have relied on the misrepresentation, then it cannot void the policy. *Id.* Thus, if the insurer "has sufficient indications that would have put a prudent man on notice and would have caused him to start an inquiry which, if carried out with reasonable thoroughness, would reveal the truth, he cannot blind himself to the true facts and choose to 'rely' on the misrepresentation." *Id.* (citation omitted.) And, "if the insurer chooses to make an independent inquiry and the subject matter and the circumstances are such that he is in a position to ascertain the facts by a reasonable search, then he cannot plead reliance even if his investigation is as a matter of fact cursory and did not reveal the true facts . . . ." *Id.*

Applying this law, we conclude that summary judgment was inappropriate. Defendants' briefs and the evidence submitted at the summary judgment stage demonstrate that there is a question of fact as to whether the three discrepancies discovered during the liability survey should have caused Scottsdale to inquire further into the true facts of Wave's business. While a reasonable jury could conclude that

these discrepancies were not significant enough to warrant further investigation by Scottsdale and thus cause Scottsdale to realize that it had, in its possession, documents that demonstrated the misrepresentations on Wave's second application for insurance, a reasonable jury also could find otherwise. And, a reasonable jury could conclude that the investigation Scottsdale undertook (through its general agent Southern Cross) was performed in such a manner as to waive reliance on the misrepresentations that Scottsdale would have discovered if it had performed the investigation in a more diligent manner.

## IV. CONCLUSION

For the foregoing reasons, the summary judgment for Scottsdale is vacated and the case is remanded for further proceedings.

JUDGMENT VACATED AND CASE REMANDED.